UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-22873-CIV-HUCK/BANDSTRA

SAONARAH JEUDY,

    Plaintiff,
v.

ERIC HOLDER, UNITED STATES
ATTORNEY GENERAL,

    Defendant.
_____/

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Saonarah Jeudy, an African-American female, brings this action against the Attorney General pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Ms. Jeudy asserts claims of unlawful race, sex, and disability discrimination based on the denial of her requests for a reasonable accommodation and subsequent termination of her employment from the Federal Bureau of Prisons. She also contends that her requests for an accommodation were denied and she was terminated in retaliation for complaining about sexual harassment by a supervisor. The case is presently before the Court on Defendant's Motion for Summary Judgment (D.E. #40). Defendant seeks summary judgment on all counts set forth in Ms. Jeudy's Third Amended Complaint (D.E. #35). For the reasons discussed below, Defendant's Motion for Summary Judgment is granted in full.[1]

---

[1] Defendant objects to the statement of material facts included in Ms. Jeudy's Response in Opposition to Defendant's Motion for Summary Judgment (D.E. #53). Local Rule 7.5(c) requires the statement of material facts submitted in opposition to a motion for summary judgment to "correspond with the order and with the paragraph numbering scheme used by the movant." S.D. Fla. L.R. 7.5(c). Defendant asserts that, rather than responding to Defendant's statement of material facts, Ms. Jeudy included "her own independent Statement that is sprinkled with passing objections to Defendant's paragraphs that Plaintiff arguably 'disputes.'" Reply Mem. in Further Supp. of Def.'s Mot. for Summ. J. (D.E. #55) at 1. Defendant also contends that the paragraphs of his statement of material facts to which Ms. Jeudy offers no response should be deemed admitted. *Id.* at 2 n.1. The Court, however, must review the record to determine whether the movant's statement is supported by the evidence. *See* S.D. Fla. L.R. 7.5(d). Thus, while Ms. Juedy has not complied with Local Rule 7.5 to the letter, the Court will look to the record in determining whether, when viewed in the light

I.  **FACTUAL BACKGROUND**

Ms. Jeudy began working for the Federal Bureau of Prisons on June 11, 2006, as a probationary correctional officer at the Federal Detention Center in Miami, Florida. Ms. Jeudy contends that, shortly after her employment commenced, she was subjected to sexual harassment by a supervisor, Lieutenant Kevin Burden. Specifically, Ms. Jeudy claims that Lieutenant Burden made several inappropriate comments regarding her physical appearance. *See* Jeudy Dep. at 52:11–22 (A70)[2] ("He just made a comment like, you have the most beautiful soft skin and whatever. . . . And he would come to my post and make comments all the time . . . ."). She also contends that he telephoned her while she was working and whispered into the phone without identifying himself. *See* Jeudy Sworn Statement at 9 (A24). Additionally, on one occasion, Lieutenant Burden called Ms. Jeudy into his office to put his shoe back on his foot. *See* Jeudy Dep. at 50:18–51:9 (A70). The alleged harassment continued until Ms. Jeudy complained in March 2007. *See* November 29, 2007 Letter from Teri Guttman Valdes to Roy E. Ferguson at 1 (A14). Ms. Jeudy spoke to Lieutenant Miller, various co-workers, and union officials about the Lieutenant Burden's harassment. *Id.*

In early 2007, Ms. Jeudy became pregnant. During her pregnancy, Ms. Jeudy experienced pelvic pain, which she attributed to fibroids in her uterus, and requested an accommodation due to her pregnancy. Specifically, Ms. Jeudy informed Lieutenant Hicks that she was pregnant and asked if she could be placed on the night shift. Jeudy Dep. at 69:10–14 (A74). According to Ms. Jeudy, she requested this shift because she "wanted to be on the shift with less activity." *Id.* at 64:21–22 (A72); *see also id.* at 71:22–72:1 (A74) (Q: And the only accommodation you asked for was to be changed to the midnight shift? A: Right, because inmates are sleeping. If I am throwing up, they wouldn't see it, and if I am in pain, I could deal with my pain.").[3] Lieutenant Hicks told her to speak

---

most favorable to Ms. Jeudy, the evidence and reasonable factual inferences drawn therefrom present a genuine issue of material fact sufficient to survive summary judgment. The following factual background is either undisputed or read in the light most favorable to Ms. Jeudy, as is required at the summary judgment stage.

[2] An Exhibit Appendix, comprised of documents labeled A-000001 through A-000088, was filed with the Memorandum in Support of Defendant's Motion for Summary Judgment (D.E. # 41-1). Both parties cite to pages contained in the Exhibit Appendix as "A ___." For ease of reference, the Court cites to the Exhibit Appendix in the same manner.

[3] While Ms. Jeudy specifically requested a shift change, she also stated, in her deposition, that she suggested additional types of accommodations, such as being placed at the front desk or in the phone room. *See* Jeudy Dep. at 72:3–14 (A74).

with the other rookie officers to see if someone would switch with her. *See id.* at 69:14–16 (A74). Ms. Jeudy was unable to find an officer to switch shifts with her. *See id.* at 69:18–19 (A74).

Ms. Jeudy also testified that she spoke to Captain Edward Felz about her pregnancy approximately three times between February and May 2007. *Id.* at 79:9–12 (A76). In May 2007, after conferring with Eric Young, the president of the union responsible for representing correctional officers, Ms. Jeudy submitted a doctor's note in support of her requests for an accommodation. The note stated that Ms. Jeudy was under the care of Dr. Susan Davila for "a pregnancy complicated by hyperemesis & pelvic pain" and that Ms. Jeudy "should not repetitively climb stairs and should be accommodated." *See* Dr. Davila Note (A88). Ms. Jeudy's requests were denied.

On May 11, 2007, Ms. Jeudy attended Annual Refresher Training at the Federal Detention Center. *See* May 14, 2007 Felz Mem. (A4). Captain Felz and approximately thirty other staff members were present. *Id.* During training, Ms. Jeudy's cell phone rang, and, at Captain Felz's direction, Ms. Jeudy removed her phone from the institution. *Id.* She later apologized to Captain Felz for the incident. *Id.* At her deposition, Ms. Jeudy acknowledged that she should not have had her phone at work while she was in the building, but stated that during the training session everyone had their phones, including Captain Felz. Jeudy Dep. at 47:17–48:20 (A69).

Three days later, on May 14, 2007, while conducting rounds during the 4:00 p.m. count, Lieutenant Burden noticed that a cell door in Ms. Jeudy's unit was ajar and unlocked. *See* May 14, 2007 Burden Mem. (A5). According to Lieutenant Burden, Ms. Jeudy stated that "she could not secure the unit because she had been ill in the restroom, and could not secure her unit in time for the 4:00 p.m. count." *Id.* In her deposition, Ms. Jeudy confirmed that one of the doors in her unit was not properly secured and that she was vomiting and sick. *See* Jeudy Dep. at 60:4–23 (A71). She contends, however, that the door that was not properly secured was to a cell for inmates with disabilities and that no one was in that cell at that time. *See id.* at 60:6–25 (A71). This incident was documented in a memorandum from Lieutenant Burden to Captain Felz and on Ms. Jeudy's performance log. *See* May 14, 2007 Burden Mem. (A5); May 14, 2007 Performance Log (A53).

By letter dated June 6, 2007, the warden, Loren A. Grayer, advised Ms. Jeudy that she would be removed, during probation, from her position as a correctional officer effective June 8, 2007. *See* June 6, 2007 Letter from Loren A. Grayer, Warden, to Saonarah Jeudy (A1–3). Ms. Jeudy was terminated because of the May 11, 2007 and May 14, 2007 incidents described above. *See id.* At the time of her termination, Ms. Jeudy was not present at the Federal Detention Center. She was on

3

leave because she fell at work on May 29, 2007. *See* Jeudy Sworn Statement at 27–28 (A42–43). Accordingly, the termination letter was mailed to her residence. *See id.* After Ms. Jeudy's termination, Charles Laugh, a union officer, informed the warden that, prior to Ms. Jeudy's termination, Officer Felz stated: "Can you believe that girl got pregnant during her probationary period." Aff. of Charles Laugh (D.E. #53-1) at 1.[4]

Ms. Jeudy initiated the present suit on August 6, 2010. In her Third Amended Complaint, she alleges five distinct claims. In Count I, Ms. Jeudy contends that Defendant violated the Rehabilitation Act of 1973 by failing to accommodate her alleged disability—her pregnancy—and by terminating her as a result of that alleged disability. Count II provides that Defendant discriminated against Ms. Jeudy based on her race because white male officers received reasonable accommodations and were not terminated for committing violations similar to those committed by Ms. Jeudy. The allegations of Count III and Count IV mirror the allegations in Count II, except that the purported discrimination is based on gender (Count III) and pregnancy (Count IV) instead of race. Finally, in Count V, Ms. Jeudy asserts that her requests for a reasonable accommodation were denied and she was terminated in retaliation for reporting sexual harassment by Lieutenant Burden.[5] Defendant seeks summary judgment on all counts.

## II.   ANALYSIS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, Defendant "bears the initial responsibility of informing the district court of the basis for [his] motion, and identifying those portions of [the record] which [he] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

---

[4] As noted in Defendant's presently pending Motion in Limine (D.E. # 61), the Laugh Affidavit attributes the above statement to a "Captain Feldman." There is no mention of a "Captain Feldman" in the record. The record, however, makes clear that there is a Captain Felz and that Captain Felz is the individual who allegedly made this statement. *See* Jeudy Sworn Statement at 20 (A35), 31 (A46); Dep't of Justice Final Agency Decision (D.E. # 35-1) at 17. In Plaintiff's Response to Defendant's Motion in Limine (D.E. #63), Ms. Jeudy acknowledged that the individual's last name was inadvertently typed as "Feldman" instead of "Felz" in the Laugh Affidavit.

[5] While Ms. Jeudy's retaliation claim is based on the sexual harassment by Lieutenant Burden and her objections thereto, there is no separate claim regarding the alleged sexual harassment itself. *See* April 20, 2011 Letter from Teri Guttman Valdes to Christopher Macchiaroli (A62) ("Please be advised that Plaintiff is not proceeding forward with a 'sexual harassment' species of sex discrimination claim in this matter. Rather, the sexual harassment and her objections and reporting of that harassment form the basis for her retaliation claims.").

The burden then shifts to Ms. Jeudy to demonstrate that a genuine issue of material fact exists. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993). Ms. Jeudy may not simply rest upon the allegations of her Third Amended Complaint. Rather, she "has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Napolitano*, No. 09-60744-CIV-HUCK, 2010 WL 431898, at *4 (S.D. Fla. Feb. 8, 2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986)). Additionally, a mere "scintilla" of evidence is not enough. *Anderson*, 477 U.S. at 252. "A genuine issue for trial exists only if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1284–85. Furthermore, while this Court must construe the evidence and reasonable inferences drawn therefrom in Ms. Jeudy's favor, summary judgment may be granted where the evidence favoring Ms. Jeudy is "merely colorable or is not significantly probative." *See id.* at 1285.

As noted above, Ms. Jeudy's Third Amended Complaint contains several claims based on various types of discrimination. Ms. Jeudy's claim of disability discrimination under the Rehabilitation Act, her claims of race and sex discrimination under Title VII, and her claim of retaliation under Title VII will be addressed in turn.

### A.  Disability Discrimination

The Rehabilitation Act of 1973 "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." *Shannon v. Postmaster Gen. of the U.S. Postal Serv.*, 335 F. App'x 21, 24 (11th Cir. 2009) (quoting *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000)). To succeed on a discrimination claim under the Rehabilitation Act, a plaintiff must demonstrate that he or she was: (1) disabled or "regarded as" disabled; (2) a qualified individual; and (3) discriminated against because of his or her disability.[6] *Id.* Ms. Jeudy contends that she was discriminated against when her requests for a reasonable accommodation due to a disability or perceived disability—her pregnancy—were denied. She also claims that she was terminated because of this disability or perceived disability. An individual is disabled under the Rehabilitation Act if that individual (1) has a physical or mental impairment that substantially limits

---

[6] "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA [Americans with Disability Act] cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). "Cases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Id.* at 1305 n.2.

5

one or more major life activities; (2) has a record of such an impairment; or (3) is "regarded as" having such an impairment. *Id.* at 24; *Cash*, 231 F.3d at 1305.

In his Motion for Summary Judgment, Defendant argues that Ms. Jeudy's claims under the Rehabilitation Act must fail because her pregnancy does not constitute a disability under federal law. Defendant correctly contends, and Ms. Jeudy concedes, that pregnancy is not normally considered a disability. *See* Third Am. Compl. (D.E. #35) at 3; *Farrell v. Time Serv. Inc.*, 178 F. Supp. 2d 1295, 1298 (N.D. Ga. 2001) ("It is clearly established that pregnancy *per se* does not constitute a disability under federal law."); *Bryson v. Mau, Inc.*, No. 8:09-321-HMH-BHH, 2010 WL 1542506, at *3 (D.S.C. Mar. 25, 2010) ("With near unanimity, federal courts have held that a pregnancy is not a 'disability' under the ADA, absent some atypical complication.") (internal quotation marks omitted); *Villarreal v. J.E. Merit Constructors, Inc.*, 895 F. Supp. 149, 152 (S.D. Tex. 1995) ("[P]regnancy and related medical conditions do not, absent unusual circumstances, constitute a 'physical impairment' under the ADA.").

Whether a person is disabled, however, must be determined on a case-by-case basis. *See Garrett v. Univ. Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 (11th Cir. 2007) ("Each claim of disability must be considered on a case-by-case basis. When the symptoms of an impairment vary widely from person to person, an individualized assessment of the effect of an impairment is particularly necessary.") (internal quotation marks and alteration omitted). Here, Ms. Jeudy argues that she did not experience a typical pregnancy. She alleges that she suffered from complications during her pregnancy—specifically, pelvic pain that resulted from the presence of fibroids in her uterus.[7] *See* Third Am. Compl. (D.E. #35) at 3. She further claims that such complications substantially limited her in the major life activity of walking, standing, or otherwise ambulating. *Id.* Accordingly, Ms. Jeudy contends that she is disabled for purposes of the Rehabilitation Act. The issue before the Court, therefore, is whether Ms. Juedy has presented sufficient evidence to raise a

---

[7] Defendant argues that Ms. Jeudy's medical records establish that she suffered from pelvic pain unrelated to any pregnancy for years and that there is no connection between Ms. Jeudy's fibroids and her purported pelvic pain. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. (D.E. #41-1) at 7–8. Accordingly, Defendant contends that Ms. Jeudy's allegation that she should have received an accommodation based on her pregnancy is disingenuous. *Id.* at 9. While it is questionable, therefore, whether the pain Ms. Jeudy experienced during her pregnancy was the result of the presence of fibroids in her uterus during that pregnancy or whether it was due to some medical condition completely unrelated to pregnancy or fibroids, the Court must assume, for purposes of this analysis, that the pelvic pain Ms. Jeudy experienced during her pregnancy was in fact caused by fibroids in her uterus, as Ms. Jeudy claims.

genuine issue of material fact as to whether her pregnancy and its related complications amount to an impairment and whether such impairment substantially limited her ability to walk, stand, or otherwise ambulate. Ms. Jeudy has not met this burden.

Assuming, for purposes of argument, that Ms. Jeudy can establish that her pregnancy related complications constitute an impairment, she has failed to present sufficient evidence to show that this impairment substantially limited her ability walk, stand, or otherwise ambulate. A person is "substantially limited" if he or she is "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner, or duration under which [he or she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Simpson v. Ala. Dep't of Human Res.*, 311 F. App'x 264, 267 (11th Cir. 2009).[8] Factors relevant to determining whether an individual is substantially limited include the nature and severity of the impairment, its duration or expected duration, and its permanent or long-term impact. *Id.* The evidence submitted by Ms. Jeudy on this issue consists of a doctor's note stating that she suffered from "a pregnancy complicated by hyperemesis & pelvic pain" and that she "should not repetitively climb stairs and should be accommodated" and Ms. Jeudy's own contention that she experienced "severe pain" during her pregnancy. *See* Resp. in Opp'n to Def.'s Mot. for Summ. J. (D.E. #53) at 5. This is simply insufficient to survive summary judgment.

While Ms. Jeudy argues that she experienced "severe pain" due to her pregnancy related complications, her actual deposition testimony reflects that her impairment was not of the nature, severity, or duration necessary to be considered substantially limiting. In her deposition, Ms. Jeudy stated that she "had pain with the fibroids, off and on," that "[t]he pain wasn't an ongoing thing all

---

[8] This definition of "substantially limited" originates from the Equal Employment Opportunity Commission ("EEOC") regulations promulgated to implement the equal employment provisions the ADA. The definition of "substantially limited" has subsequently changed due to the enactment of major changes to the ADA by Congress, which went into effect on January 1, 2009. Specifically, Congress "expressly instructed courts that '[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals.'" *Fikes v. Wal-Mart, Inc.*, 322 F. App'x 882, 883 n.1 (11th Cir. 2009) (quoting ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008)). In *Fikes*, an unreported opinion, the Eleventh Circuit held that such changes are not retroactive and looked to the ADA "as it was in effect at the time of the alleged discrimination." *Id.*; *see also Tarmas v. Sec'y of Navy*, No. 10-15370, 2011 WL 2636866, at *6 n.9 (11th Cir. July 6, 2011) ("[T]his court has never held that the ADAAA is retroactively applicable. Other circuits have concluded that the amendments are not retroactively applicable."). As the alleged discrimination in this case took place in 2007, this Court looks to the law as it existed at that time.

day long, it was off and on," and that "the pain comes in and out." Jeudy Dep. at 28:18–19 (A65), 72:1–2 (A74); 73:19–20 (A75). Additionally, she testified that she was "getting better with the fibroids" until she fell at work on May 29, 2007. *Id.* at 45:5–11 (A69) ("Q. The pain you were having, was that because of your pregnancy or because of the fall? A. Both. Q. Okay. A. Mainly because of the fall, because I was getting better with the fibroids, and once I fell, it all started again, the pain came back.").

Such testimony indicates that, at most, Ms. Jeudy was at times limited by the pain caused by the fibroids in her uterus. That Ms. Jeudy suffered some limitation, however, is not enough; the limitation must be substantial. *See Fikes*, 322 F. App'x at 884 (finding claims that plaintiff "suffers pain when sitting or standing for 'long periods' and also when he bends, kneels, walks, lifts, or climbs 'excessively'" insufficient to show he was substantially limited in major life activities of walking and working); *Allen v. U.S. Postmaster Gen.*, 158 F. App'x 240, 243 (11th Cir. 2005) ("[A]lthough Allen's foot injuries prevent her from walking long distances without rests on account of pain, the record does not demonstrate that she was substantially limited in the major life activity of walking."); *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997) ("We have found few cases defining what constitutes a substantial limitation on a person's ability to walk. What cases do exist, though, make clear that moderate difficulty or pain experienced while walking does not rise to the level of a disability.") (internal citation omitted). Accordingly, Ms. Jeudy's deposition testimony is insufficient to create a factual dispute as to whether her impairment substantially limited a major life activity.

Similarly, the doctor's note upon which Ms. Jeudy relies lends little support to her claims. The note simply provides that Ms. Jeudy "should not repetitively climb stairs and should be accommodated." Davila Note (A88). It contains no details about how the pregnancy related complications actually hindered her ability to walk, stand, or otherwise ambulate. Nor does her doctor indicate that any tests were performed to establish the extent to which Ms. Jeudy was limited in her ability to walk, stand, or otherwise ambulate or in any manner quantify the degree of limitation. *See Garrett*, 507 F.3d at 1315 ("For several reasons, this evidence of Garrett's impairments and limitations fails to raise an issue of triable fact that she was disabled. . . . [W]e note the lack of any objective evidence of the extent of Garrett's limitation. While Dr. Miller asserts that Garret was precluded from performing medium or heavy jobs, he has not referenced any objective

8

criteria supporting his conclusion. He did not identify any test that he performed, or required Garrett to perform, to determine the extent of her limitations.").

Furthermore, the fact that the note solely provided that Ms. Jeudy should not "repetitively" climb stairs, and did not contain a more significant restriction on her movement in general, establishes that, at most, Ms. Jeudy suffered from a diminished activity tolerance with respect to her ability to walk. This is not enough to create a factual issue for a jury. *See Hillburn v. Marata Elecs. N. Am.*, 181 F.3d 1220, 1227-28 (11th Cir. 1999) (holding that an assertion of a "diminished activity tolerance" is insufficient to create a genuine issue of material fact); *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000) (noting that *Hilburn* "held that a diminished activity tolerance for normal daily activities such as lifting, running and performing manual tasks, as well as a lifting restriction, did not constitute a disability under the ADA").

Though she ultimately bears the burden of establishing her disability, Ms. Jeudy presents only minimal evidence as to how her alleged impairment affected her ability to walk, stand, or otherwise ambulate. All she offers in opposition to summary judgment is her own subjective testimony and the doctor's note described above, neither of which is significantly probative on the issue of substantial limitation. She does not address any impact her complications had on her daily life outside of work, and, as to her job, Ms. Jeudy contends that she fully performed the duties required of her as a correctional officer. *See* Jeudy Dep. at 81:7–24 (A77). Thus, while Ms. Jeudy's pregnancy related complications may have caused pain and may have affected, to some degree, her ability to walk, stand, or otherwise ambulate, she has not produced sufficient evidence from which a jury could reasonably conclude that she was substantially limited. *See Brockman v. Snow*, 217 F. App'x 201, 209 (4th Cir. 2007) (holding that plaintiff's evidence fell "far short of showing that she was substantially limited in a major life activity," where such evidence consisted of a doctor's note recommending bed rest and a claim that plaintiff was instructed not to walk long distances, and where plaintiff's own actions—including performing her normal work functions—contradicted her assertion of a substantial limitation).[9] Accordingly, Ms. Jeudy has failed to raise a genuine issue of

---

[9] Alternatively, Ms. Jeudy argues that she was "regarded as" disabled by Defendant. There is simply no basis in the record, however, to conclude that Defendant regarded Ms. Jeudy as having a disability. "The mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate that the employer regarded the employee as disabled." *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) (quoting *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)). While Defendant had knowledge that Ms. Jeudy was pregnant and, arguably, that she was suffering from complications, Ms. Jeudy has offered no evidence to indicate that Defendant regarded her pregnancy or its complications as disabling.

material fact as to whether her pregnancy and its attendant complications amount to a disability, and her claims under the Rehabilitation Act fail as a matter of law.[10]

### B.   Race and Sex Discrimination

Ms. Jeudy also alleges that she was subjected to discrimination in violation of Title VII. Title VII makes it unlawful for an employer to discriminate against an individual because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). As noted above, Ms. Jeudy's Third Amended Complaint contains one count of race discrimination (Count II). It also contains two counts of sex discrimination, one based simply on gender (Count III) and one based on the fact that Ms. Jeudy was also pregnant (Count IV).[11] Specifically, Ms. Jeudy contends that she was discriminated against based on her race and sex because other employees—those who were not African American, pregnant, or female—received requested accommodations and were not terminated for allegations similar to those that formed the purported basis for Plaintiff's termination. Because the Title VII disparate treatment analysis is the same irrespective of whether the alleged violation is based on race or sex, the Court can analyze these three claims together.

Where, as here, a summary judgment motion is before the Court in a Title VII case involving circumstantial evidence, the Court analyzes the case within the confines of the burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Greer v. Birmingham Beverage Co.*, 291 F. App'x 943, 944 (11th Cir. 2008). Under this framework, Ms. Jeudy must first present sufficient evidence for a reasonable jury to determine that she has satisfied the elements of her prima facie case of discrimination. *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If Ms. Jeudy meets this initial burden, the burden shifts to Defendant to "articulate a legitimate,

---

[10] Because Ms. Jeudy has not raised a genuine issue of material fact as to whether her pregnancy constituted a disability under the Rehabilitation Act, the Court need not decide whether Ms. Jeudy was a qualified individual or whether she was actually discriminated against on the basis of such disability. Similarly, because the Court need not reach the discrimination prong of Ms. Jeudy's Rehabilitation Act claim, it is also unnecessary to address whether Ms. Jeudy failed to exhaust her administrative remedies on the requests for accommodation made before May 1, 2007, as Defendant contends. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. (D.E. # 41-1) at 13.

[11] The Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), provides that the prohibition against sex-based discrimination in Title VII "applies with equal force to discrimination on the basis of 'pregnancy, childbirth, or related medical conditions.'" *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir. 2000) (quoting 42 U.S.C. § 2000e(k)). "The analysis required for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." *Id.*

nondiscriminatory reason for the employment decision." *Id.* The burden then shifts back to Ms. Jeudy to show that the reasons articulated by Defendant are pretextual. *Id.*

To establish a prima facie case of disparate treatment, Ms. Jeudy must show that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (same). Defendant does not dispute that Ms. Jeudy satisfied the first and fourth elements of her prima facie case. Thus, the Court need only address whether Ms. Jeudy was subjected to an adverse employment action and, if so, whether Defendant treated a similarly situated employee outside of her protected class more favorably. Ms. Jeudy states that the denial of her requests for an accommodation and her subsequent termination both constitute adverse actions. Defendant contends, however, that the denial of a request for an accommodation does not amount to an adverse employment action for purposes of establishing a prima facie case of discrimination. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. (D.E. #41-1) at 18.

To establish an adverse employment action under Title VII's substantive provision, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Furthermore, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* The denial of Ms. Jeudy's requests for an accommodation did not impact the terms, conditions, or privileges of her employment, but simply maintained the status quo. Ms. Jeudy was required to do nothing more than perform her job duties in the same manner, to the same extent, and under the same conditions as she had before she requested an accommodation.

Moreover, no reasonable person could find the denial of Ms. Jeudy's request for an accommodation materially adverse. "Employers have no duty to accommodate an employee if the employee is not disabled under the ADA." *Swain v. Hillsborough Cnty. Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998). As previously discussed, Ms. Jeudy's pregnancy related complications do not amount to a disability. Ms. Jeudy, therefore, was not entitled to any accommodation. Surely a reasonable person could understand that an employee might not receive a requested accommodation

where an employer is under no obligation to provide one. Accordingly, the denial of Ms. Jeudy's requests for an accommodation does not amount to an adverse employment action sufficient to support a prima facie case of discrimination.

Ms. Jeudy's termination, however, does constitute an adverse employment action, and Ms. Juedy has therefore satisfied the second element of her prima facie case. Accordingly, the issue becomes whether Ms. Jeudy can show that a similarly situated employee outside of her protected class was treated more favorably than she was treated. To satisfy this final element of her prima facie case, Ms. Jeudy must identify an non-protected employee—an employee who is not a pregnant African-American female—who engaged in misconduct that was the same as or similar to the misconduct upon which Ms. Jeudy's termination was based but who was not similarly terminated. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The quantity and quality of a comparator's misconduct must be "nearly identical" to Ms. Juedy's misconduct "to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.*[12]

As noted previously, the June 6, 2007 letter notifying Ms. Jeudy of her termination specifies two events that contributed to the decision to terminate her. The first is the May 11, 2007 incident in which Ms. Jeudy's cell phone rang during a training session for staff members. In the letter, the warden stated that the introduction of contraband, including cellular phones, into the institution is in violation of the Standards of Employee Conduct. *See* June 6, 2007 Letter from Loren A. Grayer, Warden, to Saonarah Jeudy at 1 (A1). The second event, and arguably the more serious violation, involved Ms. Jeudy's failure to properly secure her unit during the 4:00 p.m. count on May 14, 2007. With respect to this violation, the warden noted that "[t]he Bureau is responsible for the safety and security of staff and inmates" and that Ms. Jeudy's "action was in direct violation of [her] Post Orders." *Id.* at 2 (A2). Accordingly, for Ms. Jeudy to satisfy the final element of her prima facie

---

[12] Identifying a proper comparator is necessary regardless of whether the Title VII plaintiff actually committed the violations alleged. *See Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *superceded in part by* 151 F.3d 1321 (11th Cir. 1998) ("[N]o plaintiff can make out a prima facie case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better."); *Miller-Goodwin v. City of Panama City Beach, Fla.*, 385 F. App'x 966, 971 n.2 (11th Cir. 2010) ("[R]egardless of whether [the plaintiff] committed the alleged rule violations, she is still required to show that a similarly situated male who committed the same rule violations received more favorable treatment than her.").

case, she must identify an employee outside her protected class whose misconduct is "nearly identical" to the conduct discussed in the June 6, 2007 letter.

Ms. Jeudy has failed to identify such a comparator. While she alleges that "everybody" had their cell phones during the May 11, 2007 training session, including Captain Felz, and contends that the backup officer who was assisting her with the May 14, 2007 count also should have been subjected to discipline, she cannot identify any employee who was charged with committing both of the violations upon which her termination was based or who committed two "nearly identical" or extremely similar violations. Moreover, Ms. Jeudy has failed to identify any employee who committed two such violations within three days of each other—not to mention during a probationary period—as she was charged with doing. Accordingly, Ms. Jeudy has not identified a similarly situated employee outside of her protected class who was treated more favorably than she was treated, as is necessary to establish a prima facie case of discrimination. Summary judgment is therefore appropriate. *See Bush v. Houston Cnty. Comm'n*, 414 F. App'x 264, 267 (11th Cir. 2011) (recognizing, in pretext analysis, that "[e]mployees who have committed multiple policy violations are not similarly situated to employees who committed only one such violation."); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (holding that the plaintiff and proposed comparator, who were both arrested for similar offenses, were not similarly situated where the plaintiff had three additional arrests)*; Maniccia*, 171 F.3d at 1369 (finding that a female plaintiff was not similarly situated to male comparators where each of the male comparators was involved in a "single incident of misconduct or alleged misconduct," and the plaintiff "committed at least four policy violations"); *Jones*, 137 F.3d at 1313 (noting that "Plaintiff's multiple instances of misconduct on the same day may simply have been the 'straw that broke the camel's back'").

Even assuming, however, that Ms. Jeudy can establish a prima facie case, her race and sex discrimination claims must fail because she cannot raise a genuine issue of material fact as to pretext. As noted above, Defendant asserts two legitimate, nondiscriminatory reasons for Ms. Jeudy's termination—the May 11, 2007 cell phone incident and the May 14, 2007 breach of security. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. (D.E. # 41-1) at 16–17. Accordingly, Ms. Jeudy must present enough evidence to create a genuine issue of fact as to whether each of Defendant's proffered reasons is pretext for discrimination. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024–25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the

13

employer is entitled to summary judgment on the plaintiff's claim." (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997))).

To establish pretext, Ms. Jeudy must demonstrate that Defendant's proferred reasons were not the true reasons for her termination. *See Ekokotu v. Boyle*, 294 F. App'x 523, 526 (11th Cir. 2008) (quoting *Jackson v. State of Ala. Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). She may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (quoting *Jackson*, 405 F.3d at 1289). At the summary judgment stage, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Jackson*, 405 F.3d at 1289); *see also Combs*, 106 F.3d at 1538.

While the warden ultimately effectuated Ms. Jeudy's termination, he did so based on reports provided by Ms. Jeudy's supervisors. *See* Reply Mem. in Further Supp. of Def.'s Mot. for Summ. J. (D.E. #55) at 3 ("Defendant concedes that Loren A. Grayer—then prison Warden—relied on two separate memoranda detailing Plaintiff's admitted violations of security protocols when terminating Plaintiff during her probationary period."). Specifically, Captain Felz reported the May 11, 2007 charge of misconduct regarding Ms. Jeudy's cell phone, and Lieutenant Burden documented the breach of security on May 14, 2007. *See* May 14, 2007 Felz Mem (A4); May 14, 2007 Burden Mem. (A5); May 14, 2007 Performance Log (A53). Accordingly, Ms. Jeudy attempts to raise a genuine issue of material fact as to pretext by demonstrating that her supervisors' reports, which supplied the two reasons for her termination, are unworthy of credence.

Ms. Jeudy attempts to discredit Captain Felz's report of the May 11, 2007 charge of misconduct in two ways. First, though admitting that she knew she should not have had her cell phone while she was in the building, Ms. Jeudy testified that everybody brought his or her cell phone into training, including Captain Felz. *See* Jeudy Dep. at 47:12–48:22 (A69). Second, Ms Jeudy contends that, shortly before she was terminated, Captain Felz stated to Charles Laugh: "Can you believe that girl got pregnant during her probationary period? *See* Aff. of Charles Laugh (D.E. #53-1) at 1; Resp. in Opp'n to Def.'s Mot. for Summ. J. (D.E. #53) at 1–2, 6, 9.

14

Arguably, the fact that Captain Felz punished Ms. Jeudy for her cell phone violation but did not similarly punish others for the same violation,[13] combined with his comments about Ms. Jeudy's pregnancy, potentially raises an issue as to whether Captain Felz reported Ms. Jeudy because she actually violated policy or because of some underlying discriminatory motive. This, in turn, calls into question one of the reasons proffered by the warden as grounds for Ms. Jeudy's termination. As noted above, however, Ms. Jeudy must present sufficient evidence to create a genuine issue of material fact with respect to each of Defendant's articulated reasons for the employment decision in order to survive summary judgment. *See Chapman*, 229 F.3d at 1024–25; *see also Combs*, 106 F.3d at 1543 (holding that, because the plaintiff failed to rebut one of the three reasons articulated by the defendant, the defendant was entitled to judgment as a matter of law). Thus, even assuming that Ms. Jeudy has in fact produced sufficient evidence to create a jury question as to whether the May 11, 2007 cell phone incident was a legitimate reason for her termination or pretext, she must also refute Defendant's second legitimate reason for her termination—failing to properly secure her unit during the 4:00 p.m. count on May 14, 2007.

Ms. Jeudy simply fails to present evidence sufficient to raise a factual issue as to whether this proffered reason is pretext for discrimination. She presents no evidence to indicate that Lieutenant Burden's report is unworthy of credence or to call into question the underlying violation she is accused of committing. While Ms. Jeudy testified that Officer Mendez, a white male officer who assisted her with the 4:00 p.m. count, also should have been disciplined, Ms. Jeudy acknowledged that "each officer is responsible for his or her own unit." *See* Jeudy Dep. at 62:5–63:21 (A72). It is undisputed that the unit for which Ms. Jeudy was responsible was the unit that was not properly secured. *See* May 14, 2007 Burden Mem. (A5) ("Officer Juedy was the officer assigned to the unit."). Accordingly, Officer Mendez is not a valid comparator for purposes of showing pretext.

---

[13] Identifying a similarly situated comparator is an integral part of establishing a prima facie case of discrimination, which, as discussed above, Ms. Jeudy cannot do. Assuming, however, that Ms. Jeudy can establish a prima facie case, the Court can also consider comparator evidence in its examination of pretext. *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276–77; *see also Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 338 (11th Cir. 2011). Here, Ms. Jeudy attempts to establish a valid comparator by testifying that, during training, "everybody had their cell phones." Jeudy Dep. at 48:18–19 (A69). It is important to note, however, that she does not identify any particular individual who had a cell phone at training—and, more specifically, one whose cell phone actually rang during training—but was not similarly reprimanded. Furthermore, she does not specify whether the employees who attended the training with their cell phones were outside of her protected class or whether any were in their probationary period. She merely contends that "everybody" at training had a cell phone. *Id.* Thus, Ms. Jeudy has not actually identified valid comparators.

Furthermore, and perhaps more importantly, Ms. Jeudy does not contend that her unit was, in fact, fully and properly secured. Rather, she admits that one of the doors in her unit was not secured, but argues that, because this door was to a cell for inmates with disabilities and no one was in the cell at that time, it did not matter that she failed to properly secure it. *See* Jeudy Dep. at 60:4–61:1 (A71-72) ("Q: There were no prisoners in that cell, so there was no real worry that it wasn't closed? A: The inmates are held in a single cell, meaning, that room, it's a single cell. There are no inmates in there. Mind you, I have to lock up at least 100 different cells, and I have ten minutes to do so. At the same time, I was throwing up and sick. So I closed the cells that the inmates were in. If a cell doesn't have an inmate in it, why close it?").

A plaintiff however, "is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030; *see also Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) ("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions.") (internal quotation marks omitted). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Chapman*, 229 F.3d at 1030. A correctional officer's failure to properly secure his or her unit in a federal detention center is certainly a reason that might motivate those in charge of the facility to terminate or otherwise discipline the offending officer—irrespective of whether the cell left open actually houses inmates at that particular time. Accordingly, Ms. Jeudy has failed to create a genuine issue of material fact with respect to each of Defendant's proffered reasons for her termination, and summary judgment is therefore warranted.[14]

---

[14] While not directly relevant to the analysis of Ms. Juedy's race or sex discrimination claims discussed above, it is also notable that, throughout her deposition, Ms. Jeudy contends that she was actually terminated because she fell at work and because Defendant did not want to compensate her while she was out on leave. *See* Jeudy Dep. at 48:23–49:2 (A69–70) ("Q. Do you think you were fired for the simple mistake? A. I think I was fired because of the slip-and-fall injury, the fact that they had to pay me 75 percent of my pay while I'm on Workers' Comp. That's why I was terminated."). If Ms. Jeudy truly believes that she was terminated because Defendant did not want to pay her while she was on leave, it casts additional doubt on the contention that Ms. Jeudy was in fact terminated for the discriminatory reasons alleged in this action.

### C. Retaliation

Finally, Ms. Jeudy contends that Defendant retaliated against her for complaining about sexual harassment by Lieutenant Burden. This claim differs from her claims of race and sex discrimination in that Ms. Jeudy does not allege that the denial of her requested accommodation and subsequent termination were in and of themselves discriminatory actions, but rather that such actions amounted to discrimination because they were taken in response to Ms. Jeudy's decision to report sexual harassment. *See* Third Am. Compl. (D.E. #35) at 11. Ms. Jeudy's retaliation claim, however, fails for the same reasons as the claims of race and sex discrimination claims discussed above.

The Court analyzes Ms. Jeudy's retaliation claim under the same burden-shifting framework applied to Title VII's substantive provision. *See Harrison v. Int'l Bus. Mach. Corp.*, 378 F. App'x 950, 954 (11th Cir. 2010) (noting that "Title VII discrimination and retaliation claims may be proven using circumstantial evidence and applying the burden shifting framework established in *McDonnell Douglas Corporation v. Green*"). To establish a prima facie case of retaliation, Ms. Jeudy must show (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there was some causal relationship between the two events. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *see also Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997) (providing elements of a prima facie case of retaliation).

Ms. Jeudy's contention that the denial of her requests for an accommodation amounts to an adverse action fares no better in the retaliation context. In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), the Supreme Court broadened the type of conduct considered actionable in Title VII retaliation claims. *See Crawford v. Carroll*, 529 F.3d 961, 973 (11th Cir. 2008) ("Under the holding in *Burlington*, the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff . . . .").[15] Now, to establish the adverse employment action element of a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation marks omitted).

---

[15] The standard announced in *Burlington* does not impact the adverse action standard applicable to claims of discrimination under Title VII's substantive provision. *See Crawford*, 529 F.3d at 974 n.14 ("It should be noted, however, that while the new standard enunciated in *Burlington* applies to Title VII retaliation claims, it has no application to substantive Title VII discrimination claims; the prior standard remains applicable to such claims.").

Even under this standard, however, the denial of Ms. Juedy's requests does not constitute a materially adverse employment action. As noted above, it is simply not reasonable for an employee to find the denial of an accommodation materially adverse where he or she is not disabled or "regarded as" disabled, where the employee has not provided sufficient documentation of any disability to his or her employer, and where he or she is therefore not entitled to any accommodation by law. *See Swain*, 146 F.3d at 858; *see also Seldon v. Total Sys. Servs. Inc.*, 653 F. Supp. 2d 1349, 1378–79 (holding, on a retaliation claim, that "under the particular circumstances presented by this case—where Plaintiff has not demonstrated her entitlement to an accommodation, has not communicated to her employer the specific facts regarding her specific need of an accommodation, and where no change in job duties or hours was made—no reasonable person could conclude that [the supervisor's] failure to adjust Plaintiff's schedule to accommodate her unspecified 'health problems' was materially adverse."); *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496(PGG), 2010 WL 1326779, at *20 (S.D.N.Y Mar. 31, 2010) (discussing *Seldon* and concluding, in the context of a retaliation claim, that "the alleged failure to quickly accommodate Plaintiff's condition does not constitute an adverse employment action under Title VII, because Plaintiff's condition did not qualify her as disabled under the Americans with Disabilities Act"). Accordingly, Ms. Jeudy's termination is the only employment action sufficient to establish the adverse action prong of her prima facie case.

Assuming, for purposes of argument, that Ms. Jeudy can meet the other two elements of her prima facie case,[16] her retaliation claim must fail because she cannot establish a genuine issue of material fact as to whether the reasons provided for her termination are pretextual. As discussed above, even if Ms. Jeudy can raise a question of fact regarding whether the introduction of her cell phone into the facility was a legitimate reason for her termination, she has failed to present any evidence that the Defendant's second legitimate reason for her termination, her failure to properly secure her unit on May 14, 2007, is pretext for prohibited retaliatory conduct. As noted above, Ms. Jeudy admits that she did not fully secure her unit. *See* Jeudy Dep. at 60:4–61:1 (A71–72). She simply contends that the way in which she violated protocol—failing to secure a door to a vacant cell—cannot create a basis for her termination. It is not enough, however, for Ms. Jeudy to simply

---

[16] Defendant contends that Ms. Jeudy cannot establish a causal relationship between her verbal complaint of sexual harassment and her termination. *See* Mem. in Supp. of Def.'s Mot. for Summ. J. (D.E. #41-1) at 14–16. He does not contest that Ms. Jeudy engaged in a protected activity by reporting the alleged sexual harassment.

disagree with the wisdom behind Defendant's business decisions, and it is not appropriate for this Court to reexamine such decisions. *See Elrod*, 939 F.2d at 1470; *Chapman*, 229 F.3d at 1030. Because Ms. Jeudy has not produced sufficient evidence for a reasonable jury to conclude that both reasons provided by Defendant in support of Ms. Jeudy's termination are pretextual, summary judgment is appropriate. *See Chapman*, 229 F.3d at 1037; *Combs*, 106 F.3d at 1539–43.

## III. CONCLUSION

As discussed above, Ms. Jeudy has failed to present sufficient evidence to raise a genuine issue of material fact as to whether she suffered from a disability under the Rehabilitation Act. Similarly, even assuming that Ms. Jeudy can establish a prima facie case of discrimination based on race, sex, and retaliation under Title VII, she has failed to adduce enough evidence to create a factual question as to whether both of the stated reasons for her termination were pretextual. Accordingly, Defendant's Motion for Summary Judgment is GRANTED in full. The Court will issue a separate order entering final judgment in favor of Defendant and closing this case.

DONE AND ORDERED in Chambers, Miami, Florida, November 7, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of record